IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICK J. CHAREST,                    :

     Plaintiff,                        :

vs.                                    :   CIVIL ACTION 04-0687-BH-M

OFFICER MONTGOMERY, et al.,            :

     Defendants.                       :


<u>REPORT AND RECOMMENDATION</u>


    Plaintiff, an Alabama prison inmate proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 and paid the $150.00 filing fee.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that the claims in the Third Claim, except for the claim against Defendant Boyington, and the claims based on the strip search in the Fourth Claim proceed in this action,[1] and that the remaining claims be dismissed, prior to service of process, pursuant to 28 U.S.C. § 1915A(b)(i) because the claims either are frivolous or fail to state a claim upon which relief can be granted.

I.  <u>Complaint (Doc. 12)</u>.[2]

---

    [1]Defendants Montgomery, Hadley, and Cox will be served in connection with the claims that will proceed in this action.

    [2]The Complaint before the Court is a superseding, Court-ordered amended Complaint.

Plaintiff's Complaint is based on events that occurred when he was transported to the Baldwin County Jail (hereinafter "jail") and his subsequent five-day stay at the jail.  Plaintiff stayed at the jail from May 21 – 25, 2004, so he could attend a hearing on his Rule 32 petition where he was represented by counsel.[3]  Plaintiff names as Defendants Captain Ray Farmer; Sergeants Hadley and Bryers; Officers Montgomery, Cox, Ganey, Carr, Buscaino, Sprotte, Smith, and Holloway; Chief Jail Administrator Boyington; Sheriff Jimmy Johnson; and Nurse Theresa Doe.

Due to the manner in which Plaintiff has pleaded his Complaint, the Court will address each of his claims *seriatim.* Plaintiff's claims appear to contain more information than his allegations in Section III of the Complaint against the individual Defendants.  However, the Court notes that, for the most part, his allegations are vague, particularly those in Section III.

II.  Standards of Review Under 28 U.S.C. § 1915A(b)(1).

Under 28 U.S.C. § 1915A(b)(1), the Court is required to review a complaint filed by a prisoner against a governmental

---

[3]Plaintiff states that he arrived at the Baldwin County Correctional Facility at 6:15 a.m. on May 21, 2004 (Doc. 11 at 5a) and remained there until his Rule 32 hearing on May 25, 2004 (Doc. 11 at 5b).  The duration of Plaintiff's stay at the jail appears to be for more than four days but not quite five days. For convenience sake, the Court will refer to Plaintiff's stay as a five-day stay.

official and to "dismiss the complaint, or any portion of the
complaint, if the complaint . . . is frivolous, malicious, or
fails to state a claim upon which relief may be granted[.]"[4]
This § 1915A review "applies to any suit by a prisoner against
certain government officials or entities regardless of whether
that prisoner is or is not proceeding IFP." *Martin v. Scott,* 156
F.3d 578, 579 (5th Cir.), *cert. denied,* 527 U.S. 1041, 119 S.Ct.
2405, 144 L.Ed.2d 803 (1999).  The present action is subject to
review under § 1915A because Plaintiff paid the $150.00 filing
fee (Doc. 2) and was a prisoner when he filed this action.[5]

_____

[4]Section 1915A(a) and (b)(1) provides:

    (a)  The court shall review, before docketing, if
    feasible or, in any event, as soon as practicable after
    docketing, a complaint in a civil action in which a
    prisoner seeks redress from a governmental entity or an
    officer or employee of a governmental entity.

    (b)  On review the court shall identify cognizable
    claims or dismiss the complaint, or any portion of the
    complaint, if the complaint –

        (1) is frivolous, malicious or fails to state
        a claim upon which relief may be granted; or

        (2) seeks monetary relief from a defendant
        who is immune from such relief.

[5]The predecessor to this section is 28 U.S.C. § 1915(d).
Even though Congress made many substantive changes to § 1915(d)
when it enacted 28 U.S.C. §§ 1915A and 1915(e)(2)(B) in the
Prison Litigation Reform Act of 1996 ("PLRA"), the frivolity and
the failure to state a claim analysis contained in *Neitzke v.
Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989),
was unaltered.  *Leal v. Department of Corrections,* 254 F.3d 1276,
1279-80 (11th Cir. 2001); *Bilal v. Driver,* 251 F.3d 1346, 1349
(11th Cir.), *cert. denied,* 534 U.S. 1044, 122 S.Ct. 624, 151

Under 28 U.S.C. § 1915A, a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989), or where there is "little or no chance of success," *Hyland v. Parker,* 2006 WL 10058, at *5 (11th Cir. Jan. 3, 2006).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, the claim seeks to enforce a right which clearly does not exist, *id.*, or there is an affirmative defense that would defeat the claim, such as the statute of limitations, *Clark v. Georgia Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990).  Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833.  Moreover, a complaint may be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing

L.Ed.2d 545 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under the PLRA is now mandatory. *Bilal,* 251 F.3d at 1348-49.

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see Leal,* 254 F.3d at 1279 (finding that the standard for failing to state claim under § 1915A(b)(1) and § 1915(e)(2)(B)(ii) is the standard contained in Fed.R.Civ.P. 12(b)(6)).

III.  Discussion.

A.  First Claim.

Plaintiff alleges that on May 21, 2004, Defendant Carr was traveling on Interstate 65 at rates of speed in excess of 90 miles per hour while transporting Plaintiff and inmates Pettibone and Sisk to the jail.  Plaintiff requested Defendant Carr to slow down, telling him Officer Dortch had previously driven him to the jail in the same manner.[6]  Defendant Carr told Plaintiff that "we always travel this fast."  Plaintiff contends that Defendant Carr retaliated against him for his prior state-court action against the jail, CA-02-710 (hereinafter "whistle-blower action"), which is pending in the Alabama Court of Civil Appeals.  When Plaintiff arrived at jail, he reported Defendant Carr's actions to Defendant Hadley claiming they amounted to "deliberate

---

[6]Plaintiff directs the Court to his prior federal action on this Court's docket, *Charest v. Dortch,* CA 99-0638-CB-M (S.D. Ala. Nov. 23, 1999), wherein Plaintiff sued Baldwin County Correctional Officer Jeremy Dortch for, *inter alia,* transporting Plaintiff at rates of speed in excess of 100 miles per hour. Plaintiff's action was initially filed in state court, then removed to federal court by the defendant, and then remanded to state court on Plaintiff's Motion for Remand.

indifference to a substantial risk, danger of subjecting [him] to physical harm, injury, under § 13A-6-24."[7]

Plaintiff's allegations appear to present an Eighth Amendment claim, a state-law claim, and a retaliation claim against Defendant Carr.  Plaintiff seems to contend that his Eighth Amendment rights were violated when he states that Defendant Carr's driving amounted to a "deliberate indifference to a substantial risk, danger of subjecting [him] to physical harm, injury."  Defendant Carr's actions, however, do not violate the Eighth Amendment.

This Court held in Plaintiff's prior case, *Charest v. Dortch,* 99-0638-CB-M (S.D. Ala. Nov. 23, 1999), that Plaintiff's claim for being transported by Baldwin County Correctional Officer Dortch at speeds in excess of 100 miles per hour did not present a non-frivolous, substantial federal claim.  *See Gwynn v. TransCor America, Inc.,* 26 F. Supp.2d 1256, 1266 (D. Colo. 1998) (holding that transporting an inmate at unsafe speeds in icy conditions for long distances by drivers who had very little sleep did not violate the Eighth Amendment because the deprivation was not objectively sufficiently serious and the alleged act did not result in the denial of "the minimal civilized measure of life's necessities").  This Court,

---

[7]The allegations against Defendant Hadley in the First Claim, based on Plaintiff reporting Defendant Carr's conduct to him, are discussed in the Second Claim.

therefore, found that it lacked subject matter jurisdiction over Plaintiff's claim and granted Plaintiff's Motion to Remand.

Likewise, Plaintiff's allegation of traveling at rates of speed in excess of 90 miles per hour does not violate the Eighth Amendment. *Arbing v. Parker,* 947 F.2d 948 (7th Cir. Oct. 24, 1991) (unpublished) (affirming the grant of summary judgment for defendants on inmate's claim of endangering his life by transporting him at excessive speeds); *Davis v. Stanley,* 740 F. Supp. 815, 818-19 (N.D. Ala. 1987) (finding that the inmate who was in the car when a high-speed chase commenced faced the same risk as deputies and that deliberate indifference was not shown); *accord Tomey v. Gissy,* 832 F. Supp. 172, 174 (N.D. W. Va. 1993) (holding that transporting a wheelchair-bound inmate at excessive speeds and leaving him in car for extended periods did not amount to a denial of a serious medical need).

The Eighth Amendment is violated by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate[.]" *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1984). The deprivation suffered by the inmate "must be, objectively, 'sufficiently serious' [and] . . . result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Id.* at 834, 114 S.Ct. at 1977. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the

official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838, 114 S.Ct. at 1979.

Here, Plaintiff has failed to demonstrate that he suffered a deprivation that was objectively sufficiently serious and denied him "the minimal civilized measure of life's necessities." Having failed to satisfy the objective element, Plaintiff has failed to state a claim for a violation of the Eighth Amendment.

Furthermore, Plaintiff contends that Defendant Carr's actions violated § 13A-6-24 of the Alabama Code.[8]  This section is the Alabama statute for the criminal offense of reckless endangerment.  Plaintiff, however, as "a private citizen has no judicially cognizable interest in the prosecution or non-

---

[8] Section 13A-6-24 provides:

> (a) A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

> (b) Reckless endangerment is a Class A misdemeanor.

8

prosecution of another." *See Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)).  Therefore, Plaintiff cannot proceed under this statute.  Accordingly, this claim is frivolous as a matter of law.[9]

Not only does Plaintiff maintain that Defendant Carr violated the above discussed rights by his actions, Plaintiff claims that these actions were taken in retaliation for Plaintiff's filing a prior state court action against the jail, CA-02-710, his whistle-blower action, which is on appeal to the Alabama Court of Civil Appeals.[10]  The whistle-blower action is not described, nor are any particulars provided, such as, who were all of the defendants, what was the result in the trial court, and when was the action and then the appeal filed.

_____

[9]Previously, in *Charest v. Dortch,* CA 99-0638-CB-M (S.D. Ala. Nov. 23, 1999), Plaintiff was advised that, as a private citizen, he could not prosecute a violation of a criminal statute.  Doc. 21 at 17.

[10]However, Plaintiff makes an unclear statement in his allegations directed to Defendant Bryers on page 6a, "through retaliation for CV-02-710, subjecting CC-94-1363 to be collaterally estopped." CC-94-1363 is identified as Plaintiff's criminal case which had the Rule 32 hearing scheduled for May 25, 2004.  Doc. 12 at 5b.  Due to the lack of clarity, further discussion of this allegation is not warranted.

The First Amendment protects a prisoner from being
retaliated against for exercising his right of access to courts.
*Thomas v. Evans,* 880 F.2d 1235, 1241 (11th Cir.), *cert. denied,*
510 U.S. 1026, 114 S.Ct. 641, 126 L.Ed.2d 599 (1993).  In order
to state a retaliation claim, a distinct and independent
violation of a constitutional right is not needed.  *Id.* at 1242;
*Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir. 2003).  Even
though these substantive aspects of retaliation claim have been
circumscribed by the Eleventh Circuit Court of Appeals, it has
not delineated the evidentiary standard for a prisoner
retaliation claim.  *Pate v. Peel,* 256 F. Supp.2d 1326, 1338 (N.D.
Fla. 2003).  Whereas, some circuits have held to prove
retaliation, a prisoner must establish:

> (1) that he was engaged in constitutionally
> protected activity; (2) that he suffered
> adverse action such that would deter a person
> of ordinary firmness from continuing to
> engage in that conduct; and (3) that "there
> is a causal connection between elements one
> and two – that is, the adverse action was
> motivated at least in part by the plaintiff's
> protected conduct." *Brown v. Crowley,* 312
> F.3d 782, 787 (6th Cir. 2002) (citing
> *Thaddeus-X); see also Rauser,* 241 F.3d at
> 333-34; *Dawes,* 239 F.3d at 492-93.  If the
> prisoner establishes that his exercise of the
> protected right was a substantial or
> motivating factor in the defendant's alleged
> retaliatory conduct, the burden then shifts
> to the defendant to show that the same action
> would have been taken even absent the
> protected conduct. (footnote omitted) *Brown,*
> 312 F.3d at 787; *Rauser,* 241 F.3d at 333-34;
> *Babcock,* 102 F.3d at 275.  In the context of
> prisoner cases, in determining whether a

causal connection exists the court may choose
to consider such factors as the temporal
proximity between the prisoner's protected
activity and the defendant's adverse action,
as well as statements made by the defendant
regarding his motivations.  *See Colon v.
Coughlin,* 58 F.3d 865, 872-73 (2nd Cir.
1995).  A prisoner can establish retaliatory
motive by alleging a chronology of events
from which a retaliatory animus on the part
of the defendant could reasonably be
inferred.  *Woods,* 60 F.3d at 1166 (citing
*Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th
Cir. 1988)).

*Id.* at 1338.  While other circuits have held the inmate must

prove "but for" the retaliatory motive the incident would not

have taken place, instead of adopting the burden-shifting

framework of *Mt. Healthy.  Id.* at 1139 (citing cases).

Notwithstanding, the *Pate* Court concluded that the application of

the *Mt. Healthy* burden-shifting framework would be appropriate in

this Circuit.  *Id.*

Considering the different standards used by the courts, for

the purposes of this recommendation, the burden-shifting standard

will be discussed as it is more favorable to Plaintiff.  In the

present action, Plaintiff's litigation of his state-court action

is protected by the First Amendment of the Constitution.  *Thomas,*

880 F.2d at 241.  However, the asserted adverse conduct -

Defendant Carr's driving in excess of 90 miles an hour - cannot

said to be in retaliation for Plaintiff's whistle-blower action.

Two other inmates and Defendant Carr himself were subject to the

same condition as Plaintiff was.  And Defendant Carr told

11

Plaintiff that they always drive this way, which was confirmed by Plaintiff stating that he previously filed an action complaining about Defendant Dortch's driving in excess of 100 miles per hour.

Furthermore, there is an absence of information in regard to the state-court, whistle-blower action, which results in the failure to establish a chronology of events from which retaliatory animus may be inferred. That is, the allegations do not reflect the names of the defendants to the whistle-blower action, the specific subject matter of the action, the result in the state trial court, the date when the action or appeal was filed, and that Defendant Carr had knowledge of the state-court action. For these reasons, the Court cannot conclude that there is a connection between Defendant Carr's conduct and Plaintiff's whistle-blower action. Accordingly, the undersigned finds that Plaintiff has failed to state a claim of retaliation against Defendant Carr.

B.  <u>Second Claim</u>.

On May 21, 2004, Plaintiff claims that he attempted to exhaust the above "deprivation" with Defendant Hadley and then with Defendant Boyington the next day. Both attempts were unsuccessful, causing him to file more grievances, and are alleged to be a violation of the jail's directives and federal rights and to constitute a deliberate indifference and a failure to protect Plaintiff based on their knowledge of similar actions,

12

which are contained in the whistle-blower action.  Plaintiff also maintains that Defendants Hadley, Montgomery, and Boyington conspired to retaliate against Plaintiff for his "whistle blowing on the jail" and subjected him to cruel and unusual punishment. Plaintiff further alleges that Defendant Hadley, Boyington, and Cox took no interest in his complaint about his elevated blood pressure.  However, when nurse Jane Doe entered the docket room, he "summoned" her.  She inquired about his medications, care, and diet and told him that she would pass his information along to the jail officials, staff, and kitchen staff, and then gave him 5 milligrams of vasotex[11] after diagnosing his need for it.

Concerning the first aspect of the Second Claim, the following in this paragraph is a summary of some of the allegations.  Plaintiff alleges that he attempted to exhaust his "deprivation," i.e., Defendant Carr's driving in excess of 90 miles per hour, to Defendants Hadley and Boyington.  He then filed grievances for their failure to act in accordance with jail directives and federal rights.  Plaintiff contends these omissions constitute "'failure to thus protect Charest,'" inclusive to their prior knowledge (CV-02-710), and their deliberate indifference to those rights, Hadley, Montgomery, and Chief Boyington conspired to retaliate against Charest for his

---

[11]*Physician's Desk Reference* (1996) reflects that the spelling of this medication is "vasotec."  *Id.* at 1771.

whistle blowing on the jail, these defendants subjected Charest to 'cruel and unusual punishment'. . ."

The intent of Plaintiff's allegations in the immediate paragraph is not clear to the Court.  If Plaintiff was attempting to show that he has exhausted the driving claim against Defendant Carr to meet the requirements of 42 U.S.C. § 1997e(a),[12] the Court will not address whether the exhaustion procedure has been satisfied because it has found that the underlying driving claim is subject to dismissal for failure to state a claim upon which relief can be granted.

However, turning to the substantive aspect of the claim, the Court discerns that Plaintiff is complaining about Defendants Hadley and Boyington's failure to act upon the grievance in some unidentified manner that is alleged to be in violation of the jail's directives and federal law.  The First Amendment requires that Plaintiff be allowed to petition the government to redress

---

[12]Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

his grievances, which he was allowed to do when he either reported Defendant Carr's driving to Defendants Hadley and Boyington and filed grievances for their failures to act. *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir. 1989). However, a federal right is not violated when no response is given to a grievance or when a jail's grievance procedure is not followed. *Brown v. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994) (finding that a claim for failure to follow state grievance procedure was frivolous); *Greer v. DeRobertis*, 568 F. Supp. 1370, 1375 (N.D. Ill. 1983)(holding that federal law does not require a response to a grievance); *see Vineyard v. Wilson,* 311 F.3d 1340, 1356 (11th Cir. 2002)(holding that there is no constitutional right to an investigation).  Thus, Plaintiff's claims based on the lack of a response to his grievances and a failure to follow grievance procedures are frivolous.

Additionally, Plaintiff claims that there was a conspiracy to retaliate against him on account of his whistle-blower action. As stated above, the right of access to the courts is protected from retaliation by the First Amendment. *Thomas,* 880 F.2d at 1241.  In this instance, the adverse action complained about is the failure to action upon his grievances.  The lack of a response should be expected if the complained of driving was typical of the driving of other jail personnel, as Plaintiff has indicated.  Therefore, the lack of response does not appear to be

motivated by Plaintiff's whistle-blower action.  Moreover, in Plaintiff's allegations there is an absence of information in regard to the whistle-blower action, which results in failure to establish a chronology of events from which a retaliatory animus may be inferred on the part of Defendants Hadley, Montgomery, and Boyington.  That is, the names of the defendants to the whistle-blower action, the result in the state trial court, and when the action or appeal were filed were not provided.  Furthermore, there is an absence of information to show that an agreement was reached among Defendants, which is necessary in order to state a conspiracy claim.  *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.) ("To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.'" (citation omitted)), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  Rather, Plaintiff simply mentions they "conspired." Such a vague and conclusory allegation of conspiracy is subject to dismissal.  *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Accordingly, Plaintiff has failed to state a claim regarding grievances, retaliation, and a conspiracy.

The other aspect of the second claim is Defendants Hadley, Boyington, and Cox allegedly ignored his complaints about his elevated blood pressure when he arrived at the jail.  "In order

16

to state a cognizable [medical] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  That is, liability under § 1983 cannot be based on negligence. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *see Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986)("As we held in *Daniels*, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Here, Plaintiff claims three non-medical Defendants ignored his complaints about elevated blood pressure when he arrived at the jail.  Plaintiff admits that shortly thereafter he was diagnosed by a nurse with high blood pressure and received medication for it.  Plaintiff does not state what his medical condition was prior to his arrival, when he received his last dose of medicine, or whether his condition presented itself as being critical at that time.  Most important, Plaintiff was not denied from having access to the nurse who treated him by these Defendants.  Based on this information, or rather lack of information, in Plaintiff's allegations, the undersigned finds that Plaintiff has failed to state a claim for deliberate indifference to a serious medical need.

    C.  <u>Third Claim</u>.

Plaintiff claims on May 21, 2004, in the docket room, Defendant Montgomery conducted a strip search of him in the "direct" presence of female inmate, even after Plaintiff advised Defendant Montogmery that there was a female present, and that Defendants Hadley and Cox did not intervene to stop the exposure. Plaintiff avers that he filed grievances on Defendants with Defendant Boyington.  Plaintiff maintains his Fourth, Eighth, and Fourteenth Amendments rights were violated.  The Third Claim against Defendants Montgomery, Hadley, and Cox will proceed in this action.[13]  However, it is recommended that the claim against Defendant Boyington, if it can be interpreted to be a claim, be dismissed as frivolous for the reasons stated in the Court's discussion of the Second Claim regarding grievances.

D.  <u>Fourth Claim</u>.

Plaintiff asserts that prior to leaving the docket room, he gave to Defendant Carr two letters, one addressed to Judge Floyd, and the other addressed to Judge Robert Wilters.  The letter to Judge Floyd requested access to law books and Shepard's so he could conduct research for his May 25, 2004, hearing because the jail did not have a law library.  The letter to Judge Wilters was "for protecting [his] right to redress courts . . . due to the

---

[13]The allegations in the Fourth Claim based on Defendant Hadley's and Defendant Cox's failure to intervene in the strip search of Plaintiff will proceed in this action along with the Third Claim.

past whistle blowing (CV-02-710) concerning his previous deprivations at [the jail], all of which remain currently pending in appeals court."

Furthermore, Plaintiff alleges that Defendant Montgomery seized two, clear ink pens, which had been approved by ADOC and Defendant Hadley, conformed to the jail's handbook, and were his only means to take notes in preparation for his hearing on May 25, 2004. Defendants Hadley and Cox are alleged to have been standing idly by.

Due to the manner in which Plaintiff has pleaded his Fourth Claim, the Court only discerns claims being pleaded against Defendants Montgomery, Hadley, and Cox. Plaintiff's claims against Defendant Montgomery appear to be for a denial of access to the courts and for a deprivation of property.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)). Law libraries and legal assistance are not ends in themselves, but are means by which officials ensure that a prisoner is provided a "reasonably adequate opportunity" to

present his claims to a court.  *Id.* at 351, 116 S.Ct. at 2180.
That is, a viable claim is not stated when an inmate "merely
allege[s] a denial of access to a law library or adequate
attorney." *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir.
1998) (quotation omitted).

A violation of the right of access to the courts requires
that a prisoner establish that he has been deprived of
"meaningful access to the courts." *Id.* (quoting *Bounds*, 430 U.S.
at 823, 97 S.Ct. at 1495).  To do so, a prisoner must establish
that he has suffered an actual injury or will imminently suffer
an actual injury.  *Id.* at 349-51, 116 S.Ct. at 2179-80.  If a
prisoner is unable to establish an actual injury or imminent
actual injury, the prisoner lacks standing to bring a claim for
the denial of access to the courts.  *Id.*

The actual injury component of the claim requires a prisoner
to demonstrate that an actual deficiency in the library or legal
assistance program, *id.* at 351, 116 S.Ct. at 2180, or an
official's action, *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th
Cir. 1998), impeded his efforts to pursue his claims in the
courts.  Examples of such situations are when a prisoner's
complaint is dismissed for a technical reason of which the
prisoner was unaware due to a deficiency in the prison's legal
assistance facilities or when inadequacies in the law library
prevented a prisoner from filing a complaint.  *Lewis*, 518 U.S. at

20

351, 116 S.Ct. at 2180.  A prisoner's claim in the underlying
action must be demonstrated to be a nonfrivolous claim and one
that is related to the prisoner's direct appeal of his
conviction, to his habeas petition, or to his civil rights action
vindicating a basic constitutional right.  *Id.* at 354, 116 S.Ct.
at 2181-82.  And he must identify in the complaint the underlying
action and its lost remedy, and the remedy that may be awarded.
*Christopher v. Harbury*, 536 U.S. 403, 415-16, 122 S.Ct. 2179,
2187, 153 L.Ed.2d 413 (2002).  "Impairment of any other
litigating capacity is simply one of the incidental (and
perfectly constitutional) consequences of conviction and
incarceration."  *Lewis,* 518 U.S. at 355, 116 S.Ct. at 2182.

     In the present action, Plaintiff has not alleged that he has
suffered an injury of the type required by the *Lewis* decision.[14]
Notwithstanding this omission, Plaintiff has also indicated to
the Court that he was represented at his Rule 32 hearing by
retained counsel, Roger C. Appell, and that in addition to
retained counsel, the judge intended to appoint counsel to
represent Plaintiff at the hearing.  Because Plaintiff was

---

[14]The Court notes that in Section IV of the complaint form,
Plaintiff indicates that in May, 2005, Judge Floyd orally
invalidated one count in CC-94-1363.61, but he is awaiting the
final ruling.  This invalidation appears to have occurred one year
later and is not shown to be connected to the May, 2004, Rule 32
hearing.  On the other hand, if the invalidation was shown to be
connected, there remain other counts that do not appear to fall
into the "nonfrivolous" category necessary to satisfy *Lewis*.

21

represented by counsel at the hearing, there was no denial of access to the courts. *Wilson*, 163 F.3d at 1291 (finding that representation by counsel prevented inmate from establishing the injury element of an access-to-courts claim); *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. June 1, 1981) (finding that denial of access to the courts did not occur when the clerk refused to docket the criminal defendant's *pro se* motion because he was represented by counsel).[15]  Accordingly, a claim for denial of access to the courts is frivolous.

In addition, Plaintiff appears to be advancing a claim for a deprivation of property without due process of law based on Defendant Montgomery's taking of his two pens.  In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the United States Supreme Court held that the deprivation of property by persons acting under color of state law does not constitute a deprivation without due process of law when a predeprivation hearing is impractical and there is available an adequate postdeprivation remedy at the time of the deprivation.  *Id.* at 532-33, 104 S.Ct. at 3203-04.  The *Hudson* Court reasoned that impracticality occurs when the loss of property occurs as a result of a "random, unauthorized act by a state employee," *id.*

---

[15]The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (5th Cir. 1981)(*en banc*), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

at 532, 104 S.Ct. at 3203 (quoting *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *overruled on other grounds Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)), because it is impossible for the State to know beforehand of the deprivation, negligent or intentional, and to provide a predeprivation hearing prior to the loss, *id.* at 533, 104 S.Ct. at 3203.  Some postdeprivation remedies that have satisfied due process are administrative procedures, *Parratt*, 451 U.S. at 543-44, 101 S.Ct. at 1917, or ordinary state tort litigation procedures, *Hudson*, 468 U.S. at 535-36, 104 S.Ct. at 3204.

According to the Complaint, a predeprivation hearing would have been impractical because the pens' seizure was the result of a random, unauthorized act, and not an established procedure. Therefore, in order for Plaintiff's due process claim to be reviewable in this Court, Plaintiff would have to establish that no adequate postdeprivation procedure was available to him at the time of deprivation.  *See Tinney v. Shores,* 77 F.3d 378, 382 n.1 (11th Cir. 1996) (finding no due process violation because the availability and adequacy of postdeprivation remedies was not addressed).

However, in the present action, Plaintiff cannot establish that he did not have an adequate postdeprivation remedy available to him at the time of the deprivation.  Claims for the loss of

property incurred at the hands of Alabama state agencies or their employees may be presented for compensation to the Alabama Board of Adjustment pursuant to sections 41-9-60, *et seq.*, of the Alabama Code.  In Alabama, a sheriff, sheriff's deputies, and jailers act "exclusively for the state rather than for the county in operating a county jail." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1288 (11th Cir.), *cert. denied,* 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998); *cf. Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1432 (11th Cir. 1997) ("no reasonable basis for distinguishing claims against the jailers from claims against the sheriff"); *Vinson v. Clarke County, Ala.,* 10 F. Supp.2d 1282, 1295 n.10 (S.D. Ala. 1998) (holding that a jailer is entitled to the same immunities as the sheriff because the jailer is hired by the sheriff's department, is a legal extension of the sheriff, and carries out the statutory duties of a sheriff).  Because Defendant Montgomery is a state officer, Plaintiff had available to him at the time of the deprivation an adequate postdeprivation remedy that would have compensated him for his loss, i.e., presenting a claim to the Alabama Board of Adjustment.  *Browning v. City of Wedowee*, *Ala.,* 883 F. Supp. 618, 623 (M.D. Ala. 1995) (finding plaintiffs had an adequate postdeprivation remedy under Ala. Code § 41-9-60 for the retention of the pistol by the sheriff and deputies).  And, as a

state employee, Defendant Montgomery may be personally liable to Plaintiff in an ordinary tort action. *Milton v. Espey*, 356 So.2d 1201, 1203 (Ala. 1978); Ala. Code § 6-5-262 (1975).

It is not necessary that the postdeprivation remedy be available to Plaintiff at this present time to determine whether the deprivation was with or without due process. *See Parratt*, 451 U.S. at 543-44, 101 S.Ct. at 1917. It is only required that an adequate postdeprivation remedy be available when the deprivation occurs. *Id.* Because an adequate postdeprivation remedy was available to Plaintiff at the time of his loss, the deprivation of Plaintiff's property does not violate due process. Accordingly, Plaintiff's claim for a deprivation of property without due process of law is frivolous.

In this claim, Plaintiff alleges that Defendants Hadley and Cox did not intervene to protect Plaintiff from Defendant Montgomery's action of the taking of the pens. These allegations against Defendants Hadley and Cox are frivolous as there was no underlying constitutional violation requiring their intervention. *See Skrtich v. Thornton,* 280 F.3d 1295, 1302 (11th Cir. 2002)(finding liability for the failure to intervene in the use of excessive force, a constitutional violation).

E. <u>Fifth Claim</u>.

Plaintiff maintains that upon entering his cell on May 21, 2004, he reported the "specific violations" of Defendants Hadley,

25

Cox, Montgomery, and Carr, as described in the Fourth Claim, to
Defendant Buscaino, who refused to investigate or to make a
report to Defendants Boyington or Johnson for criminal
prosecution under section 13A-11-8(a)(1) of the Alabama Code,[16]
which resulted in the filing of grievances.  Plaintiff asserts
Defendant Buscaino's failure to act was in retaliation for his
filing the whistle-blower action against jail Defendants and in
violation of the jail's handbook and his constitutional rights.

Defendant Buscaino has no duty under the Constitution to
investigate or report those acts that have already taken place
and refer them to superiors for possible criminal prosecution.
*Vinyard,* 311 F.3d at 1356 (finding that plaintiff was not

---

[16]This statute provides:

(a)(1) HARASSMENT. A person commits the crime
of harassment if, with intent to harass,
annoy, or alarm another person, he or she
either:

a. Strikes, shoves, kicks, or otherwise
touches a person or subjects him or her to
physical contact.

b. Directs abusive or obscene language or
makes an obscene gesture towards another
person.

(2) For purposes of this section, harassment
shall include a threat, verbal or nonverbal,
made with the intent to carry out the threat,
that would cause a reasonable person who is
the target of the threat to fear for his or
her safety.

(3) Harassment is a Class C misdemeanor. . .
.

26

entitled to have her complaints of police brutality investigated); *Otero*, 832 F.2d at 141 (finding that a private citizen has no interest in prosecution of another).  And a violation of agency regulation does not rise to level of a violation of a constitutional right needed to state a claim under section 1983.  *Smith v. Georgia,* 684 F.2d 729, 732 n.6 (11th Cir. 1982).  Thus, these claims are frivolous as a matter of law.

Nonetheless, Plaintiff has couched Defendant Buscaino's failure to investigate and report as occurring in retaliation for his whistle-blower action.  Again, Plaintiff has not stated a retaliation claim.  Granted, the litigation of his whistle-blower action is protected conduct.  *Thomas,* 880 F.2d at 1241.  And in this instance, the alleged adverse retaliatory action by Defendant Buscaino is his failure to take certain action requested by Plaintiff; Plaintiff states that Defendant Buscanio "flatly refused to get involved, stating he would not report such . . . for criminal prosecution." (Doc. 12 at 5c)  The Court will not discuss whether this conduct would dissuade a person of ordinary firmness from pursuing an investigate or a report because the whistle-blower action has not been connected Defendant Buscaino's failure to act.

That is, Plaintiff has not shown a retaliatory motive by Defendant Buscaino.  There is an absence of information showing that Defendant Buscaino had knowledge about the prior action, who

27

the defendants are to the prior action, the result in the state-court action, and when the state-court action and appeal were filed.  Thus, there is no chronology from which a retaliatory animus may be inferred.  Accordingly, the undersigned finds Plaintiff has failed to state a retaliation claim upon which relief can be granted.

    F.  <u>Sixth Claim</u>.

On the evening of May 21, 2004, Defendant Ganey shackled Plaintiff with leg and wrist irons and escorted him to Defendant Farmer's office where Defendant Farmer and another defendant from the whistle-blower action were waiting, which was done pursuant to a conspiracy.  Defendant Ganey directed Plaintiff down a short cut, out of view of the cameras, where he spoke "abusively" to Plaintiff and instilled fear into him.  Plaintiff claims Defendant Ganey retaliated pursuant to a conspiracy with Defendants Farmer and Bryers due to his "whistle blowing" lawsuit against the jail and that his acts were calculated to instill fear in Plaintiff and cause injury, which was the grief and weight loss that Plaintiff experienced.  However, Plaintiff conveys that Defendant Ganey indicated that he was being taken to the office to be informed that the judge was appointing Plaintiff an attorney so Plaintiff did not need to go across the street to use the law library.

Plaintiff's allegations of a conspiracy in this claim fall

28

short of stating a conspiracy claim.  There are no allegations showing that among the identified Defendants an agreement was reached, which is necessary to state a conspiracy claim.  *Bailey*, 956 F.2d at 1122.  Rather, Plaintiff conclusorily asserts they "conspired."  Such a vague and conclusory allegation of conspiracy is subject to dismissal.  *Fullman*, 739 F.2d at 556-57.

Furthermore, in regard to Plaintiff's allegations of threats, intimidation, and harassment, such verbal harassment in a section 1983 action does not present a claim of constitutional magnitude and is, therefore, frivolous.  *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983); *Stacey v. Ford,* 554 F. Supp. 8, 9 (N.D. Ga. 1982).

Again, Plaintiff claims that the complained of actions were taken in retaliation for his prior whistle-blower action.  As discussed in the First Claim, the state-court action is protected conduct.  *Thomas,* 880 F.2d at 1241.  And, like his other claims of retaliation, Plaintiff has not provided information reflecting a chronology of events from which a retaliatory animus can be inferred, even though he does state, unlike in his other claims, that a person who was a defendant in the whistle-blower action was in Defendant Farmer's office and, arguably but not clearly stated, Defendant Farmer knew of the whistle-blower action.  Thus, Plaintiff has failed to state a claim of retaliation.

G.  <u>Seventh and Eighth Claims</u>.

On May 21, 2004, Defendants Farmer, Bryers, and Ganey are alleged to have told Plaintiff that the judge decided to appoint him counsel and not to let him use the law library.  Plaintiff advised them that he did not want appointed counsel because he would be acting as co-counsel to attorney, Roger C. Appell, whom his family had hired.  Defendants Farmer and Bryers advised him to complete the request forms for books and give them to Defendant Ganey who, in turn, would give the completed forms to them, and they would ensure that he would receive the requested books.

On May 22, 2004, Defendant Smith refused to accept Plaintiff's request forms so Plaintiff filed grievances.  As a result of the "deliberate indifferences of Defendants Farmer, Bryers, Ganey, Johnson, and Boyington a material claim was estopped, 'all the above named defendants had prior, previous knowledge, that Charest needed, requested access to courts, upon entering BCJ on 5/21/04.' The effects of this denial, deprived Charest of adequate access to court, in preparing for the hearing." (Doc. 12 at 5e).  In regard to his grievances, Plaintiff states that in them he complained that Defendants Farmer, Bryers, and Ganey conspired and retaliated against him on account of the whistle-blower action for the purpose of denying him access to the courts.

30

Plaintiff's claim based on the lack of access to legal books is construed to be a straightforward access-to-courts claim.  As discussed in regard to the Fourth Claim, an access-to-courts claim requires Plaintiff to establish standing by showing an actual injury or imminent actual injury.  *Lewis*, 518 U.S. at 349-51, 116 S.Ct. at 2179-80.  A prisoner who is represented by counsel, such as Plaintiff, is not able to show the necessary injury.  *Wilson*, 163 F.3d at 1291; *Tarter,* 646 F.2d at 1014.  In the alternative, Plaintiff has not identified the type of injury required by *Lewis*.  Therefore, Plaintiff's access-to-courts claim is frivolous.

   H.  <u>Ninth Claim</u>.

   Plaintiff asserts that D pod where he was incarcerated during his entire five-day stay was "in a state inconsistent with basic human needs"; there were leaky toilets, flooding from upper-tier showers, and an inadequate supply of cleaning materials, soap, and toilet tissue.  Plaintiff claims he notified Defendant Sprotte, Ganey, Buscaino, Holloway, Johnson, and Boyington of these conditions and they failed to take corrective measures.  Thus, Plaintiff ate and slept in these conditions and suffered an unidentified disease to his face.

   The Eighth Amendment protects prisoners from punishment that is "cruel and unusual."  *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986).  "The 'cruel and

31

unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby,* 379 F.3d 1278, 1288 (11th Cir. 2004) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 345-46, 101 S.Ct. 2392, 2398-99, 69 L.Ed.2d 59 (1981)).  However, "the Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400.  All that is required is that the State furnish "its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety . . . ." *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983); *accord Helling McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-06, 103 L.Ed.2d 249 (1989).  Furthermore, the Eighth Amendment "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" *Campbell v. Sikes,* 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).  "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399).

Prison conditions violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Id.*

(quoting *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399).  An Eighth

Amendment conditions of confinement claim has two parts:

> (1) an objective component which requires
> that conditions be "sufficiently serious,"
> *Farmer,* 511 U.S. at ----, 114 S.Ct. at 1977;
> *Wilson v. Seiter,* 501 U.S. 294, 298, 111
> S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991); and
> (2) a subjective component which requires
> that prison officials exhibit "deliberate
> indifference" to prisoner health or safety.
> *Farmer,* 511 U.S. at ----, 114 S.Ct. at 1977;
> *Wilson,* 501 U.S. at 301-05, 111 S.Ct. at
> 2326-27; *see also Helling,* 509 U.S. at ----,
> 113 S.Ct. at 2480; *Hudson v. McMillian,* 503
> U.S. at ----, ----, 112 S.Ct. 995, 999, 117
> L.Ed.2d 156 (1992); *Estelle v. Gamble,* 429
> U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d
> 251 (1976).

*Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir. 1994).

The objective component requires the Court to look to

"contemporary standards of decency," *Estelle v. Gamble,* 429 U.S.

at 103, 97 S.Ct. at 290, to determine whether the challenged

conditions resulted in a deprivation of the "minimal civilized

measure of life's necessities," *Rhodes,* 452 U.S. at 347, 101

S.Ct. at 2399, or, at a minimum, of a "single human need," *Wilson*

*v. Seiter,* 501 U.S. 294, 305, 111 S.Ct. 2321, 2327, 115 L.Ed.2d

271 (1991); *Jordan,* 38 F.3d at 1565.  Moreover, the challenged

condition must be "extreme."  *Chandler,* 379 F.3d at 1289 (quoting

*Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399).  "Nothing so

amorphous as 'overall conditions' can rise to the level of cruel

and unusual punishment when no specific deprivation of a single human need exists." *Wilson,* 501 U.S. at 305, 111 S.Ct. at 2327 (emphasis added); *Jordan*, 38 F.3d at 1564.

The subjective component of a viable conditions of confinement claim requires that the prison official have been "deliberately indifferent" to a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 828-29, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838, 114 S.Ct. at 1979. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. *Farmer,* 511 U.S. at 844, 114 S.Ct. at 1982-83. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1028 (11th Cir. 2001)(*en banc*).

34

In the present action, Plaintiff complains about leaky toilets, the upper-tier showers flooding, and not receiving adequate cleaning supplies.  The allegations directed to the specific conditions are vague and sparse.  Even though Plaintiff identified certain conditions, he has not painted a picture of a pod containing extreme conditions, much less conditions which he was not able to avoid during the majority of the five days that he was incarcerated in the pod.

The pod configuration was not described by Plaintiff. Consequently, the Court deduces that it is a large area, apparently two-story, that may or may not contain cells.  This area is larger than a single cell, and therefore the complained of conditions did not have the effect on Plaintiff as if they had occurred in a single cell.  The conditions as described were unpleasant, not harsh, and did not appear to cause a deprivation of single, human need or to violate "the minimal civilized measure of life's necessities."  Moreover, in regard to the allegation of not receiving adequate cleaning supplies, Plaintiff does not allege that he was totally without cleaning supplies for the brief five-day period.  *Cf. Henry v. Covington County,* 2005 WL 1268263, at *2 (M.D. Ala. May 27, 2005) (dismissed pursuant to § 1915(e)(2)(B) because there was no constitutional violation based on the 11-day denial of out-of-cell exercise when plaintiff could have exercised in his jail cell).  This lack of adequate

cleaning supplies for five days is not conveyed as a sufficiently serious deprivation.  Moreover, Plaintiff's disease on his face is claimed to be caused by these conditions.  Plaintiff, however, does not identify the disease and no explanation is offered connecting the conditions to the disease.

In light of the foregoing, the undersigned finds that Plaintiff's allegations do not establish the objective component of an Eighth Amendment conditions-of-confinement claim. Plaintiff's allegations are very general and do not demonstrate that he suffered a deprivation of a "single human need" or the "minimal civilized measure of life's necessities" during his five-day stay at the jail.  *Fullman*, 739 F.2d at 556-57 (finding that vague and conclusory allegations are subject to dismissal). Because the objective component has not been met, the Court is not required to consider the subjective component.  *Chandler,* 379 F.3d at 1297 (finding that the death row inmates' claim for hot temperatures in their individual cells during the summer was not an extreme deprivation so as to satisfy the objective component of a conditions-of-confinement claim and, therefore, the court was not required to address the subjective component).  Upon consideration of Plaintiff's allegations, it is recommended that the Ninth Claim be dismissed for failure to state a claim upon which relief can be granted.

I.  <u>Tenth Claim</u>.

Plaintiff claims that he suffered "severe weight loss" when Defendant Nurse Theresa (Doe) denied him Dr. Barnes's medically prescribed meals even after Plaintiff's need for these meals was verified with the prison by Nurse Jane Doe.  Plaintiff further contends, in an unclear manner, that he complained to Defendants Boyington, Smith, Buscaino, Ganey, and Holloway about this "to no avail."

Plaintiff offers no other information about Defendant Nurse Theresa Doe's responsibility for seeing that Plaintiff received his medically prescribed diet after Nurse Jane Doe had verified it with the prison.  This lack of information places the Court in the position of having to speculate, which the Court will not do. However, the Court notes that Plaintiff has not identified his medical condition that requires a special diet.[17]  And in regard to Defendant Theresa Doe's actions being taken in concert with Defendant Holloway, this allegation fails to show that an understanding was reached.  Due to the conclusory nature of Plaintiff's pleading of this claim, he has failed to state a claim upon which relief can be granted.  *Fullman,* 734 F.2d at 556-57 (dismissing civil rights and conspiracy actions that are pled in a vague and conclusory manner); *see Bailey*, 956 F.2d at

---

[17]It was only after the Court reviewed the many complaints filed in this action that it found one specific reference to the type of diet.  Plaintiff states that he was prescribed a "high blood pressure diet" (Doc. 10 at 8).

1122 (finding that an agreement must be reached before a conspiracy claim is stated).  Therefore, Plaintiff has failed to state a claim upon which relief can be granted.

Notwithstanding the foregoing, the Constitution requires that an inmate "be provided 'reasonably adequate food'. . . containing sufficient nutritional value to preserve health[.]" *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir.)(citations omitted), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).  Even though Plaintiff may not have received his medical diet, he has not shown that he was not able to meet his dietary needs from the food that was served to him.  *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed. 239 (1981); *Hamm*, 774 F.2d at 1574. Furthermore, Plaintiff claims Defendants Boyington, Smith, Buscaino, Ganey, and Holloway failed to intervene.  Due to the failure to present a constitutional violation in regard to the underlying claim, the undersigned finds that Plaintiff has failed to state a failure-to-intervene claim against these Defendants. *Skrtich*, 280 F.3d at 1302 (finding liability for the failure to intervene in the use of excessive force).  Accordingly, Plaintiff's Tenth Claim is due to be dismissed for failure to state a claim upon which relief can be granted.


IV.  <u>Conclusion</u>.

Based upon the foregoing reasons, it is recommended that the claims in the Third Claim, except for the claim against Defendant Boyington, and the claims based on the strip search in the Fourth Claim proceed in this action, and that the remaining claims be dismissed, prior to service of process, pursuant to 28 U.S.C. § 1915A(b)(i) because the claims either are frivolous or fail to state a claim upon which relief can be granted.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is

insufficient to submit only a copy of the original
brief submitted to the magistrate judge, although a
copy of the original brief may be submitted or referred
to and incorporated into the brief in support of the
objection.  Failure to submit a brief in support of the
objection may be deemed an abandonment of the
objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can
be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.

DONE this 6th day of February, 2006.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE