IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICK J. CHAREST,                    :

     Plaintiff,                       :

vs.                                    :   CIVIL ACTION 04-0687-BH-M

OFFICER MONTGOMERY, et al.,            :

     Defendants.                      :

<u>REPORT AND RECOMMENDATION</u>

This is an action under 42 U.S.C. § 1983 by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that, on May 21, 2004, while being booked into the Baldwin County Correctional Center ("BCCC") as a convicted prisoner, he was subjected to a strip search which was viewed by a female detainee.[1]  (Doc. 12 at 4, Claims 3 and 4).  Plaintiff contends that this intentional lack of privacy during the strip search constitutes deliberate indifference on the part of Defendants Correctional Officer Martinuous Montgomery, Correctional Officer Jake Hadley, and Correctional Officer Harold Cox, and violates his Fourth, Eighth and Fourteenth Amendment rights.[2]  (Doc. 12).

---

[1]Plaintiff is currently in prison after being convicted of 1st Degree Rape and 1st Degree Sodomy in 1995.  (Doc. 12).

[2]Plaintiff has asserted numerous other claims against additional defendants in this action, but all of said claims have

As relief, Plaintiff asks the Court to issue a declaratory judgment declaring that Defendants violated Plaintiff's Fourth, Eighth and Fourteenth Amendment rights, and seeks compensatory damages in the amount of $5,000 and punitive damages in the amount of $10,000 "upon any and all defendants found guilty" of violating his rights.  Plaintiff also seeks an award of nominal damages in the amount of at least one dollar. (Doc. 12 at 7).

The remaining Defendants in this action, Montgomery, Cox, and Hadley filed an Answer (Doc. 44) and a Special Report (Doc. 43) on June 23, 2006, denying that they violated Plaintiff's constitutional rights and asserting the following defenses: that Plaintiff has failed to state a claim; Eleventh Amendment immunity; qualified immunity; and that Plaintiff's claims are barred for his failure to exhaust all available state remedies. (Doc. 44 at 1-2).

Subsequently, on July 17, 2006, Plaintiff filed a "Traverse" in response to Defendants' Special Report, along with a Motion for Discovery and a set of interrogatories and requests for production, each reiterating Plaintiff's original claims.  (Docs. 45, 47, and 48).  Plaintiff subsequently filed two Motions to Compel regarding the requested discovery, first on September 5,

---

previously been dismissed as frivolous by this Court.  (See docs. 12, 17, 28 and 29).

2

2006, and again on December 26, 2006. (Docs. 49 and 51). The Court granted in part and denied in part Plaintiff's discovery requests on January 9, 2007. (Doc. 53). Defendants responded to Plaintiff's discovery requests on February 13, 2007, and February 19, 2007. (Docs. 54, 56, and 57).

Subsequently, Plaintiff filed a Motion to Amend his Complaint, basing his request on the discovery of what he considered "latent" information. (Doc. 59). On March 19, 2007, Magistrate Judge Milling issued a Report and Recommendation that Plaintiff's request to amend his Complaint be denied, and this Report and Recommendation was adopted by this Court on April 11, 2007. (Docs. 64 and 67). Also, on March 19, 2007, this Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment. (Doc. 64). Despite lengthy objections filed by Plaintiff, the decision to deny Plaintiff's request to amend his Complaint was again affirmed by this Court on May 30, 2007. (Docs. 70, 71, and 72). Following this Court's ruling on May 30, 2007, denying Plaintiff's request to amend his Complaint, Defendants' Motion for Summary Judgment, along with Plaintiff's responses thereto, was accordingly taken under submission. (Docs. 64, 67, 68, 69, 70, 71, and 72). After consideration by the Court, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be

dismissed with prejudice, and that judgment be entered in favor
of Defendants Martinuous Montgomery, Jake Hadley, and Harold Cox
and against Plaintiff Patrick J. Charest on all claims.

<u>I. FACTS</u>

On May 21, 2004, while incarcerated at Limestone
Correctional Facility, Plaintiff was transported to the Baldwin
County Correctional Center ("BCCC") in preparation to attend a
hearing at the Baldwin County Courthouse regarding Plaintiff's
Rule 32 petition. (Doc. 12 at 4). Following his arrival at the
BCCC, Plaintiff claims that, while in the docket room, he was
subjected to a strip search by Defendant Montgomery in the
"direct" presence of a female inmate, despite Plaintiff's
warnings to Defendant that the female was within the viewing
area. Plaintiff further claims that Defendants Hadley and Cox
were present but failed to intervene and stop the exposure.
(Doc. 12 at 5). Specifically, Plaintiff complains that
Montgomery told him to "turn around, bend over, spread your ass;
thurn [sic] around, lift your nuts; hands over your head; open
your mouth." (*Id.* at 4). Plaintiff further alleges that
Defendant Montgomery was smiling and laughing during the strip
search. (*Id.*).

Plaintiff contends that allegedly having been within view of
a female during the time of his strip search is an invasion of

4

his privacy under the Fourth Amendment, as well as a violation of his Eighth and Fourteenth Amendment rights.[3]

According to Defendants, on May 21, 2004, Plaintiff was booked as a convicted prisoner into the BCCC for the purpose of appearing at a court hearing scheduled for May 25, 2004.  (Doc. 43 at 2).  Upon Plaintiff's arrival at BCCC, he was booked by Defendant Hadley.  (*Id.*).  According to Defendants, "[i]t is the policy that all inmates processed into the BCCC be strip searched by corrections officers prior to being placed in the general population."  (Doc. 43, Exs. C and D).

Following his arrival at the BCCC, Plaintiff was "dressed out" by either Defendant Cox or Defendant Montgomery.[4] (Doc. 43 at 2).  According to Defendants, the act of "dressing out" an inmate includes a visual, non-invasive strip search, a sanitary shower, and changing the Plaintiff from his personal clothing into a BCCC inmate jumpsuit.  (*Id.*)  This search is conducted in

_____

[3]The Court presumes that Plaintiff's original claim of a violation of his Fourteenth Amendment rights was related to other allegations in his complaint, and as those allegations have been dismissed as frivolous, Plaintiff has not successfully alleged a Fourteenth Amendment Due Process Claim.  Thus, the Court will consider only Plaintiff's claim of violation of his Fourth and Eighth Amendments.

[4]There is some question as to whether Plaintiff was "dressed out" by Defendant Montgomery or Defendant Cox, but this uncertainty is moot, as the Court has determined, based upon the undisputed facts, that no constitutional claim occurred in this matter.

a small (approximately seven feet by seven feet) changing room, with one door and no windows.  (Doc. 43, Exs. C and D).  BCCC procedure requires that the door to the changing room be closed at the time of the strip search, and that a corrections officer be positioned between the door and the inmate during the search. (*Id.*).  Defendants note that if the door to the changing room is wide open, the interior of the room is visible from the booking counter and surrounding area, and from holding cell B-2.  (*Id.*). Holding cell B-2 is used for male inmates only.  According to Defendants, in the unlikely event that the door to the changing room was not completely closed during a strip search, the body of the corrections officer conducting the search would also block observation of the interior of the changing room.  (*Id.*).

Within minutes of Plaintiff's booking, a female, Linda Chaffins, was booked as well into the BCCC, so it is reasonable to assume that a female was "present" in the booking section of the BCCC at the time of Plaintiff's search.  (Doc. 43, Exs. C and D; doc. 56, attachment 1).  However, according to Defendants, after booking, Chaffins was taken directly upstairs to the women's facility, and was not placed in a holding cell.  (*Id.*).

Following the alleged incident, Plaintiff filed a written grievance with the BCCC, in accordance with its inmate grievance procedure.  (Doc. 43 at 4).  BCCC officials answered Plaintiff's

6

grievance on May 27, 2004, noting that no females were present in the area, and even if there had been any present, they could not have seen through the dressing room door.  (Doc. 43, Ex. A at 9).

As a result of the alleged incident, Plaintiff contends that his privacy rights were violated, as well as his rights against cruel and unusual punishment.  (Doc. 12 at 4).  Plaintiff has requested nominal, compensatory and punitive damages, as well as a declaratory judgment award. (Doc. 12 at 7).

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Fed. R. Civ. P.* 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

7

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

*Fed. R. Civ. P.* 56(e); *see also Celotex Corp.*, 477 U.S. at

325-27.  "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party.  If the evidence is merely

colorable or is not significantly probative, summary judgment may

be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249-50 (1986) (internal citations omitted).  "Summary judgment

may be granted against a party who fails to establish the

existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial."

*Liberty Mut. Fire Ins. Co. v. Sahawneh*, 2001 WL 530424, *1 (S.D.

Ala. May 11, 2001) (citing *Anderson*, 477 U.S. at 249-50).

## III. DISCUSSION

In this action, Plaintiff seeks redress for alleged

constitutional deprivations pursuant to 42 U.S.C. § 1983.

Section 1983 provides that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be

> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .  For the purposes of this
> section, any Act of Congress applicable
> exclusively to the District of Columbia shall
> be considered to be a statute of the District
> of Columbia.

42 U.S.C. § 1983 (1994).

Plaintiff claims that Defendants' actions violated his Fourth and Eighth Amendment constitutional rights.[5]  Initially, the Court will address Plaintiff's claim that his Eighth Amendment right to be free from cruel and unusual punishment has been violated.

---

[5]It is unclear as to whether Plaintiff is suing Defendants in their official and/or individual capacities.  Therefore, the Court will consider both.  As state officials, Defendants are absolutely immune from suit for damages in their official capacities.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Additionally,"[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple*, 334 F.3d at 995 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Having determined herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

9

Eighth Amendment

Plaintiff claims that Defendant Officers Montgomery, Hadley, and Cox were deliberately indifferent as they either "dressed" him out or observed the procedure of dressing him out following his arrival at BCCC. Plaintiff claims that the actions or inactions by these Defendants in the process of strip searching him allegedly in the presence of a female detainee constituted deliberate indifference, violating his Eighth Amendment rights. (Doc. 12 at 4).

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers*, 475 U.S. 312, 318, 106 S. Ct. 1078, 1083, 89 L. Ed. 2d 251 (1986); *see also Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401, 1408-09, 51 L. Ed. 2d 711 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain. . . , the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987)(citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2398, 69 L. Ed. 2d 59 (1981)).

Further, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing *Rhodes*, 452 U.S. at 345-46, 101 S. Ct. at 2398-99). The Eighth Amendment, however, "does not authorize judicial reconsideration

10

of 'every governmental action affecting the interests or well-being of a prisoner.'" *Campbell v. Sikes*, 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986)).  Furthermore, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349, 101 S. Ct. at 2400.  "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).  Prison conditions violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Id.*

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . .  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200, 109 S. Ct. at 1005-1006 (citations omitted).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing.  First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" so as to amount to the denial of a basic human need.  *Chandler*, 379 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)).  A prisoner must prove the denial of "the minimal civilized measure of life's necessities."  *Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).  The challenged condition must be "extreme."  *Id.*  Although an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id*. at 35, 113 S. Ct. at 2481. Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other

12

words, the prisoner must show that the risk
of which he complains is not one that today's
society chooses to tolerate.

*Id.* at 36, 113 S. Ct. at 2482.

Second, the inmate must prove that the prison official was
subjectively "deliberately indifferent" to a substantial risk of
harm. *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S. Ct. 1970,
128 L. Ed. 2d 811 (1994). "[A] prison official cannot be found
liable under the Eighth Amendment for denying an inmate humane
conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference." *Farmer*, 511 U.S. at 837,
114 S. Ct. at 1979. "[A]n official's failure to alleviate a
significant risk that he should have perceived but did not, while
no cause for commendation, cannot under our cases be condemned as
the infliction of punishment." *Farmer*, 511 U.S. at 838, 114 S.
Ct. at 1979. In addition, prison officials are not liable even
if they actually knew of a risk if they responded reasonably to
the risk. *Farmer,* 511 U.S. at 844, 114 S. Ct. at 1982-83.
Moreover, "[a] plaintiff must also show that the constitutional
violation caused his injuries." *Marsh v. Butler County, Ala.*,
268 F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in
original).

Having set forth the general legal principles applicable to

13

Plaintiff's claim, the Court now turns to the facts.   As the
basis for his Eighth Amendment unconstitutional conditions of
confinement claim, Plaintiff merely contends that he was strip
searched after arriving at the BCCC, and that during the search,
he was allegedly briefly viewed, at least in part, at some point
by a female inmate.  (Doc. 12).  Plaintiff has not offered the
Court any idea as to how long the subject "viewing" lasted, how
open and apparent the viewing was, or exactly where the female
was in relation to Plaintiff.  Based upon Plaintiff's filings, as
well as Defendants' filings, any viewing by a female detainee
would have been highly unlikely, and even assuming that it could
have occurred at all, it would have been very brief in time, and
limited in scope.  (Docs. 12, 43).

     Under the circumstances of this action, Plaintiff's
allegations related to his treatment at BCCC do not amount to the
denial of a basic human need, *see DeShaney*, 489 U.S. at 199-200,
nor do they evidence a deliberate indifference to a substantial
risk of serious harm to Plaintiff's health or safety.  *See
Farmer*, 511 U.S. at 837-38.  Plaintiff's only claim of damage,
the Court presumes, although never stated by Plaintiff, is one of
emotional distress, and it has been held that "[a] claim of
psychological injury does not reflect the deprivation of the
minimal civilized measures of life's necessities that is the
touchstone of a conditions-of-confinement case." *Wilson v.
Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (quoting *Babcock v.*

14

*White*, 102 F.3d 267, 272 (7th Cir. 1996)), *cert. denied*, 525 U.S. 1139, 119 S. Ct. 1028, 143 L. Ed. 2d 38 (1999) (internal citations and quotation marks omitted).  *See also Billingsley v. Shelby County Dept. of Correction*, No. 02 29203, 2004 WL 2757915, *7 n.3 (W.D. Tenn. Nov. 24, 2004) (denying an Eighth Amendment conditions of confinement claim because such cases require a showing of *extreme* deprivation for which a claim of psychological injury will not suffice).

Plaintiff has simply not alleged prison conditions which "involve the wanton and unnecessary infliction of pain."[6] Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.  Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendants violated Plaintiff's rights under the Eighth Amendment.  Under the circumstances of this action, the Court finds that

_____

[6]However, even if the Court were to assume that Plaintiff has alleged a constitutional violation based on his conditions of confinement, Plaintiff would still be unable to recover his requested relief for compensatory and punitive damages for psychological harm as a result of 42 U.S.C. § 1997e(e), which states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  To make a successful claim for mental or emotional injury, "a prisoner must allege more than a *de minimis* physical injury in order to satisfy the requirement of section 1997e(e)."  *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.), *modified in part by Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001). As Plaintiff has failed to allege any physical injury at all, he would be unable to withstand the operation of 42 U.S.C. § 1997e(e).

Plaintiff's allegations fail to establish an Eighth Amendment constitutional violation.

### Fourth Amendment

Plaintiff also alleges that Defendants violated his Fourth Amendment right to bodily privacy by allowing the door to the strip search room to remain open, and thus, allowing him to be viewed by a female detainee.  Under the Fourth Amendment,

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Initially, this Court notes that the United States Supreme Court has indicated that prisoners retain a very minimal Fourth Amendment interest in privacy after they are incarcerated.  *See Hudson v. Palmer*, 468 U.S. 517, 527-28, 104 S. Ct. 3194, 3201, 82 L. Ed. 2d 393 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.").  In explaining the reasoning behind this limited right of privacy, the *Hudson* Court has stated as follows:

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct.

16

> Inmates have necessarily shown a relapse in
> ability to control and conform their behavior
> to the legitimate standards of society by the
> normal impulses of self-restraint; they have
> shown an inability to regulate their conduct
> in a way that reflects either a respect for
> law or an appreciation of the rights of
> others.

*Id.* at 526.  The Court further stated that "[w]e believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement."  *Id.* at 528.

In the present action, while the Eleventh Circuit has recognized that prisoners "retain a *limited* constitutional right to bodily privacy," this right to privacy is evaluated on a "case-by-case basis."  *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (emphasis added).  Moreover, this right to bodily privacy must be examined in light of whether the action by Defendants is "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).  The Eleventh Circuit has acknowledged that "a prisoner's constitutional rights must be exercised with due regard for the 'inordinately difficult undertaking' of modern prison administration."  *Fortner*, 983 F.2d at 1029 (quoting *Turner*, 482 U.S. at 85, 107 S. Ct. at 2259).

It has further been held that even when a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Fortner*, 983 F.2d at 1030 (quoting

17

*Turner*, 482 U.S. at 89, 107 S. Ct. at 2261).  The following four factors help determine whether a regulation or policy is reasonable:

> (a) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and (d) whether the regulation represents an "exaggerated response" to prison concerns.

*Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991) (quoting *Turner*, 482 U.S. at 89-91, 107 S. Ct. at 2261-63).  With regard to the fourth factor, the Eleventh Circuit has emphasized that it "is not a 'least restrictive alternative' test, but rather it allows an inmate to 'point to an alternative that fully accommodates the prisoners' rights at *de minimis* cost to valid penological interests' as evidence that a restriction is not reasonable."  *Fortner*, 983 F.2d at 1030 (quoting *Turner*, 482 U.S. at 90-91, 107 S. Ct. at 2262-63).

Applying these factors to the present action, the Court finds that, looking at the facts in the most favorable light to Plaintiff, an isolated, likely brief, and most notably accidental, viewing by a female detainee of Plaintiff while he was being "dressed out" upon his arrival at BCCC is not a violation of Plaintiff's Fourth Amendment bodily privacy rights.

18

Initially, the Court notes that it has been held that strip searches are necessary for overall prison safety.  In *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S. Ct. 1861, 60 L. Ed. 2d 447, the Supreme Court noted that "[c]orrections officials testified that visual cavity searches were necessary not only to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution."  The *Bell* Court explained that "each case... requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *Id*. at 559.

The *Bell* Court further advised that "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" must be considered.  Moreover, the Court is mindful that prison officials are owed "substantial deference" to their decisions regarding prison administration.  *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (citing *Bell*, 441 U.S. at 547-48).

It should be noted that in the present action, Plaintiff's search occurred upon his arrival to the BCCC, which is a customary procedure, and notably, it occurred inside a small room with no windows and only one door.  (Doc. 43, Exs. C and D).  According to Defendants, the door would have customarily been shut, and in the unlikely event that it remained open, Officer Montgomery or Officer Cox would have been standing between

19

Plaintiff and the doorway, thus blocking a direct view of
Plaintiff.  (*Id.*).  Prison records also indicate that only one
female was booked around the time in which Plaintiff was booked,
and she was immediately taken to the upstairs women's area of the
jail.  (*Id.*; doc. 56, attachment 1).  Despite Plaintiff's claim
that Defendants were smiling and laughing during his search,
cases where privacy violations have been found are far more
extreme.  *See Boxer X v. Harris*, 437 F.3d 1107 (11th Cir. 2006)
(holding that prisoner stated section 1983 privacy claim where he
alleged that he was repeatedly forced to strip and masturbate for
female guard's entertainment).

Clearly, common sense tells one that strip searches are not
by nature pleasant experiences.  However, unfortunately, as the
law has described, they are necessary actions used to maintain
safety in a "volatile 'community,'" where prison staff must "take
all necessary steps to ensure the safety of not only the prison
staff and administrative personnel, but also visitors." *Hudson*,
468 U.S. at 527.  Prisons must be "ever alert to attempts to
introduce drugs and other contraband into the premises which, we
can judicially notice, is one of the most perplexing problems of
prisons today." *Id.*

Considering the evidence in the light most favorable to
Plaintiff, the question is whether a jury could reasonably
conclude that Defendants violated Plaintiff's bodily privacy
rights under the Fourth Amendment.  Under the circumstances of

this action, the Court finds that Defendants have not violated Plaintiff's Fourth Amendment rights, as Defendants' actions were "reasonably related to legitimate penological interests." *Fortner*, 983 F.2d at 1030 (quoting *Turner*, 482 U.S. at 89, 107 S. Ct. at 2261).

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. *Celotex Corp.*, 477 U.S. at 322. "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation." *Bennett*, 898 F.2d at 1534.

Plaintiff's claim at best targets a single isolated instance of a possible, and likely brief viewing, and nothing more. Plaintiff has simply failed to put forth "sufficient" evidence which is beyond "merely colorable," or is "significantly probative," to withstand an award of summary judgment in favor of Defendants. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants Martinuous Montgomery, Jake Hadley, and Harold Cox are entitled

to summary judgment in their favor on all claims asserted against

them by Plaintiff.  Accordingly, it is recommended that

Defendants' Motion for Summary Judgment be GRANTED, that this

action be DISMISSED with prejudice, and that judgment be entered

in favor of Defendants Martinuous Montgomery, Jake Hadley, and

Harold Cox and against Plaintiff Patrick J. Charest on all

claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  Objection.  Any party who objects to this recommendation or
anything in it must, within ten days of the date of service of
this document, file specific written objections with the clerk of
court.  Failure to do so will bar a *de novo* determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the magistrate
judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d
736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404
(5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging
the findings and recommendations of the magistrate judge is set
out in more detail in SD ALA LR 72.4 (June 1, 1997), which
provides that:

A party may object to a recommendation entered by a
magistrate judge in a dispositive matter, that is, a matter
excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement
of Objection to Magistrate Judge's Recommendation" within
ten days after being served with a copy of the
recommendation, unless a different time is established by
order.  The statement of objection shall specify those
portions of the recommendation to which objection is made
and the basis for the objection.  The objecting party shall
submit to the district judge, at the time of filing the
objection, a brief setting forth the party's arguments that
the magistrate judge's recommendation should be reviewed *de
novo* and a different disposition made.  It is insufficient
to submit only a copy of the original brief submitted to the
magistrate judge, although a copy of the original brief may
be submitted or referred to and incorporated into the brief
in support of the objection.  Failure to submit a brief in
support of the objection may be deemed an abandonment of the
objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 7th day of June, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE